UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- X
DAVID CORONEL, on behalf of himself and all : 
others similarly situated, :
                                              :
                                    Plaintiff, :        **No. 26 Civ. 1759**
                                              :
                        -against-             :        **COMPLAINT**
                                              :
ULTRA WATER MILL TOWD LLC d/b/a DERO'S : **COLLECTIVE ACTION**
FOOD & FAMILY, ANDREW DEROBERTIS, and :
EVAN DEROBERTIS, :
                                              :
                                   Defendants. :
-------------------------------------------------------------------- X

Plaintiff David Coronel, on behalf of himself and all other similarly situated, by

his attorneys Pechman Law Group PLLC, complaining of Defendants Ultra Water Mill

Towd LLC d/b/a Dero's Food & Family, Andrew DeRobertis, and Evan DeRobertis,

(collectively, "Defendants"), alleges:

**NATURE OF THE ACTION**

1.      Coronel regularly worked over forty hours per workweek at Dero's Food

& Family, a restaurant in Hampton Bays. Throughout Coronel's employment,

Defendants failed to compensate him and other non-exempt employees with overtime

pay at 1.5 times their regular rate for hours worked over forty each week.  Defendants

also failed to provide Coronel and other non-exempt employees with: (1) spread-of-hours

pay when they worked shifts spanning over ten hours, (2) a wage notice at their time of

hire, and (3) accurate wage statements with each payment of wages.  Defendants further

subjected Coronel to a discriminatory and hostile work environment by imposing a ban

on speaking his native language, Spanish, while at work.

2.      Coronel brings this action on behalf of himself and all similarly situated

non-exempt employees (collectively the "FLSA Collective") to recover unpaid overtime

wages, spread-of-hours pay, liquidated damages, statutory damages, pre- and post-judgment interest, and attorneys' fees and costs pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), the New York Labor Law § 190 *et seq.* ("NYLL"), and the NYLL's Wage Theft Prevention Act, NYLL §§ 195, 198 ("WTPA"). Coronel further brings this action seeking monetary damages and other relief to redress Defendants' unlawful discrimination under the New York State Human Rights Law, N.Y. Exec. Law § 290 *et seq.* ("NYSHRL").

## JURISDICTION

3. This Court has subject matter jurisdiction over this civil action pursuant to 29 U.S.C. § 216(b), 28 U.S.C. §§ 1331, 1337, and has supplemental jurisdiction over Plaintiff's NYLL and NYSHRL claims pursuant to 28 U.S.C. § 1367 because they arise out of the same common nucleus of operative facts.

## VENUE

4. Venue is proper in the Eastern District of New York under 28 U.S.C. § 1391 because the events giving rise to Plaintiff's claims occurred at Dero's Food & Family, which is located and operated by Defendants in the Eastern District of New York.

## THE PARTIES

### Plaintiff David Coronel

5. Coronel resides in Suffolk County, New York.

6. Defendants employed Coronel as a bartender, server, pizza maker, and manager from approximately March 2025 through December 21, 2025.

### Defendant Ultra Water Mill Towd LLC

7. Defendant Ultra Water Mill Towd LLC is a New York limited liability company that owns, operates, and does business as Dero's Food & Family, a restaurant

2

located at 149 West Montauk Highway, Hampton Bays, New York 11946.

8. Defendant Ultra Water Mill Towd LLC is an "enterprise engaged in commerce" within the meaning of the FLSA.

9. Defendant Ultra Water Mill Towd LLC has employees engaged in commerce or in the production of goods for commerce and handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person.

10. In the three years preceding the filing of this Complaint, Defendant Ultra Water Mill Towd LLC has had an annual gross volume of sales in excess of $500,000.

**Individual Defendants**

11. Defendants Andrew DeRobertis and Evan DeRobertis (collectively, the "Individual Defendants") are owners and principals of Dero's Food & Family.

12. Andrew DeRobertis is identified as a principal of Dero's Food & Family on New York State Liquor Authority filings and as the registered agent for Dero's Food & Family on New York Department of State Division of Corporations filings.

13. Individual Defendants held and exercised authority over personnel decisions at Dero's Food & Family, including the hiring and firing employees, including Coronel, setting employee schedules and wage rates, and maintaining personnel records.

14. Individual Defendants determined Coronel's rate of pay.

15. Defendants Andrew and Evan DeRobertis have held themselves out in the press as the owners of Dero's Food & Family. *See* https://northforker.com/2025/05/brothers-in-the-food-business-open-a-restaurant-of-their-own/ (last accessed March 13, 2026).

16. The Individual Defendants exercised sufficient control over Dero's Food & Family operations and Plaintiff's employment to be considered Plaintiff's employer

under the FLSA, NYLL and NYSHRL.

## FACTUAL ALLEGATIONS

**Coronel's Hours Worked and Pay**

17.     Coronel worked as a bartender, server, pizza maker, and manager during his employment at Dero's Food & Family.

18.     Coronel's primary duties included taking orders from customers, preparing pizza, making and serving drinks, stocking the bar, and generally attending the restaurants' customers.

19.     Throughout his employment, Coronel's work schedule varied between forty and eighty-six hours per workweek.

20.     For example, for the workweek of May 4, 2025, Coronel worked 86.20 hours.

21.     For example, for the workweek of July 6, 2025, Coronel worked 65.59 hours.

22.     For example, for the workweek of October 26, 2025, Coronel worked 43.86 hours.

23.     Although Plaintiff and the FLSA Collective worked over forty hours per week, Defendants did not pay them overtime wages of one and one-half (1½) times the regular rate for hours worked over forty per workweek.

24.     Throughout his employment, Defendants paid Coronel $25 per hour for hours worked up to forty per workweek.

25.     Throughout his employment, Defendants did not pay Coronel any wages for any hours worked over forty per workweek.

26.     Throughout his employment, Coronel worked shifts that spanned more than ten hours in one workday.

27.     Defendants did not pay Coronel spread-of-hours pay on days when he worked shifts spanning over ten hours.

4

28.     Defendants did not provide Coronel with a wage notice at his time of hire.

29.     Throughout his employment, Defendants paid Coronel's wages without accompanying wage statements accurately reflecting, *inter alia,* his hours worked, and hourly rates paid.

30.     Defendants intentionally failed to provide wage statements to Coronel in violation of the WTPA to conceal the precise number of overtime hours that he worked and the overtime wage rates to which he was entitled in order to inhibit his ability to advocate for the proper payment of wages.

31.     Defendants' WTPA violations led to and formed part of Defendants' scheme to deprive Coronel of his overtime wages due as alleged in this complaint.

**National Origin Discrimination**

32.     Plaintiff is a Spanish-speaker of Ecuadorian national origin.

33.     In early August 2025, Andrew DeRobertis ("Andrew") approached Coronel and instructed him not to speak Spanish in the restaurant. Coronel responded that prohibiting Spanish would not benefit the restaurant, as more than half of the staff was Spanish speaking.  In reply, Andrew told him that if he wanted to speak Spanish, he could do so in the kitchen.

34.     On August 13, 2025, during a shift, Coronel was speaking in Spanish while reviewing the daily specials with four or five servers, who had limited proficiency in English.  Andrew approached the group and directed them to stop speaking in Spanish, stating, "That is it with the Spanish."  Coronel did not respond to Andrew and continued reviewing the specials in English.  After Andrew walked away, Coronel advised the employees to speak as much English as possible to avoid getting into trouble with Andrew.

35.     Later that day, Coronel sent a text message to Andrew explaining that:

In the U.S., an employer generally cannot ban employees from speaking Spanish (or any other language) at all times, because that can be considered national origin discrimination, which is prohibited under Title VII of the Civil Rights Act of 1964.
          However:

o   An employer can require English during certain work-related tasks (for example, when speaking with customers who only speak English, or during safety-critical communications) if there's a clear business necessity.

o   They cannot have an "English-only" rule for the entire shift, including casual conversations, breaks, or times when English is not needed for the job.

o   The Equal Employment Opportunity Commission (EEOC) has taken action against employers who enforce blanket bans on speaking other languages, especially if it targets specific groups like Spanish speakers.
    So if a restaurant told workers "no Spanish at all on the floor, even to each other", that could very well be illegal unless they can prove a strong, job-related reason-and even then, the rule must be limited in scope.
    Customer discomfort or suspicion is not a valid legal reason to ban another language.

o   A "business necessity" has to be something more concrete – like ensuring safety, efficient operations, or effective job performance-not just avoiding misunderstandings based on stereotypes or assumptions.

o   Saying "customers might think you're talking about them" is usually considered discriminatory, because it assumes people will automatically be offended by hearing another language, which the law does not support.
    The EEOC has even taken action against restaurants and stores that use that exact reasoning, ruling that it violates Title VII's protection against national origin discrimination.
    I don't wanna create any problem or anything, but I want you to understand that, it's not correct to have a no Spanish policy in front of customers, I love you bro, but that makes my coworkers and myself to feel bad because we are prohibited to talk in our native language

36.   On August 14, 2026, at 2:13 a.m., Andrew responded:

Dave your becoming a problem. No Spanish policy is a good thing. Bro your doing the minimum GET BETTER YOUR NOT A LEADER YOUR BECOMING A PROBLEM.

37.   Coronel texted back, "Andrew I'm just showing you the truth."   Andrew replied, "FUCK YOU, I give you the chance to rise, your not supervisor."

6

38. Coronel responded the following:

If I'm becoming a problem, I apologize, this is me, is mi language, it's my culture.

39. Andrew then replied, "No you're not."

40. Coronel responded the following:

You got it, this is what I get paid for helping, for being the good guy.

41. Andrew text Andrew back, "Dave you do as little as possible."

42. Coronel replied, "Thank you Andrew, I appreciate y'all did for me, but I won't tolerate you treating me this way."

43. Andrew responded the following:

No you're being a good guy. You're the guy we hired to run the front. And you're not doing it. No leadership and lazy. Be on time tomorrow. 5 minutes early, cleaned and clocked in on time. You were late the day i asked. Dave idk what the fuck going on in your head but its not good. Fix it.

44. Coronel replied:

I've been working since day one, working more hours than anyone else, I have nothing else to say, if you don't appreciate that, it's on you, thank you for the opportunity.

45. Andrew texted Coronel back:

Dave the no Spanish speaking policy comes from someone more nolagable about the industry more than me or you. Grow up, it's America or leave. You're doing the minimum, you can't even get tacos right.

46. Coronel responded:

You got it. I don't think you need me. hope you get paid all my hours of overtime that I have on record, I'll be there tomorrow sometime after noon to give you all the information of all the social pages for the restaurant so you guys can run it. And if it comes from someone with that much experience, what a shame to be so ignorant of creating a no Spanish speaking policy, in a country where Spanish is the second most spoken language within the country.

47.   Andrew replied:

Idk, where the dave i know went. But this under achieving little bitch has to go. Dave your doing as little as possible. Hand me your keys tomorrow. Call perella your washing dishes. I tried to give you everything, you proved your worth nothing. Wash dishes or bye. Its my fault your're not a leader.

48.   Coronel responded:

After you guys taking advantage of me, making me work over 60 hours with no pay more than 40 hours, and on top of that, getting mad cause I don't get there on time or that I'm not "leading", what a shame. Thanks, I don't need this, I was trying to help but this is not helping me at all, this is the summer I made the less amount of hours of money working the same or more hours than other summers."

49.   Andrew texted Coronel the following:

Your fired. Ass hole. Hope today you got a emotional support dog.

50.   On August 15, 2025, Vincent Paul DeRobertis ("Paul"), Andrew's and Evan DeRobertis' father, called Coronel, apologized on Andrew's behalf, and asked Coronel to go to Dero's Food & Family the next day to meet with him and his sons to discuss what happened.  Coronel agreed to meet with them.

51.   During the meeting on August 16, 2025, Paul apologized for Andrew's behavior and asked him to return to his job at Dero's Food & Family.  Paul told Coronel that his sons needed him and that Coronel was "part of the family."

52.   During this meeting, Evan DeRobertis ("Evan") told Coronel he was sorry for how Andrew had behaved and suggested that Coronel should have approached him about it.

53.   During this meeting, Andrew told him he was sorry for the things he said, explained that he felt overwhelmed and had overreacted.

8

54.    Coronel agreed to resume employment with Dero's Food & Family but emphasized that he would not tolerate being mistreated again and that he would not adhere to the no Spanish policy.

55.    Coronel told Evan, Andrew, and Paul that he respects them and accepts them as they are, but they were disrespecting his culture and where he came from.

56.    In response, Paul told Coronel that he understood where he came from but reminded him that "this is America."  Paul also pointed out that Coronel should consider how far he had come, attributing his success to his ability to speak English.

57.    On August 17, 2025, Coronel returned to Dero's Food & Family.

58.    After a few weeks, Andrew continued to enforce the no Spanish policy and instructed Coronel not to speak Spanish in the restaurant's dining room.

59.    On December 21, 2025, a customer, who was also Coronel's friend, came to the restaurant for breakfast and sat at the bar, where Coronel took his order.  While polishing glasses, Coronel began speaking with the customer in Spanish, and later another employee, Jose Rodas, joined their conversation.

60.    Thereafter another customer arrived at the restaurant and sat near the bar. Coronel took his order and went back to polishing glasses and his conversation.  Andrew then sat at the bar, and said to Coronel and Rodas, "That is enough with the Spanish. I already told you I don't want you speaking Spanish."

61.    In front of both customers, Andrew told Coronel that he felt offended when he spoke in Spanish because he wasn't sure if Coronel was talking about him.

62.    In response, Coronel told Andrew that the no Spanish policy was racist.  He added that just because Andrew did not understand the conversation did not mean it was about him.

63.    Coronel's friend and customer asked for the bill, paid, and left the

restaurant.

64.     Following his friend's exit, Coronel went to the restaurant's kitchen and Andrew followed him.  Once in the kitchen, Andrew told Coronel that "you must understand that you are in America and that you have to speak English if you want to be here."

65.     In response, Coronel handed Andrew the restaurant's keys and left the restaurant.

## COLLECTIVE ACTION ALLEGATIONS

66.     Plaintiff brings this action on behalf of himself, and all similarly situated non-exempt workers, including servers, bartenders, pizza makers, kitchen workers who work or have worked for Dero's Food & Family within the three years prior to the commencement of this action and who elect to opt-in to this action (the "FLSA Collective").

67.     The FLSA Collective consists of approximately twenty workers who have been victims of Defendants' common policies and practices that have violated their rights under the FLSA by, *inter alia*, willfully denying the FLSA Collective overtime pay.

68.     Defendants intentionally, willfully, and repeatedly harmed the FLSA Collective by engaging in patterns, practices, and policies violating the FLSA, including but not limited to failing to pay the FLSA Collective overtime wages for hours worked over forty per workweek.

69.     Defendants engaged in this unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees their compensation.

70.     Defendants are aware or should have been aware that the FLSA required them to pay the employees an overtime premium for hours worked in excess of forty per workweek.

71.     Defendants' unlawful conduct has been intentional, willful, and in bad faith and has caused significant monetary damage to Plaintiff and the FLSA Collective.

72.     The FLSA Collective would benefit from the issuance of a court-supervised notice of the present lawsuit and the opportunity to join the present lawsuit.  All similarly situated employees can be readily identified and located through Defendants' records. The similarly situated employees should be notified of and allowed to opt-in to this action pursuant to 29 U.S.C. § 216(b).

### FIRST CLAIM
### (FLSA – Unpaid Overtime Wages)

73.     Plaintiff and the FLSA Collective repeat and incorporate all foregoing paragraphs by reference.

74.     Defendants are employers within the meaning of 29 U.S.C. §§ 203(d) and 207(a) and employed Plaintiff and the FLSA Collective.

75.     Defendants were required to pay Plaintiff and the FLSA Collective one and one-half (1½) times their regular hourly rate for all hours worked in excess of forty hours per workweek pursuant to the overtime wage provisions set forth in the FLSA, 29 U.S.C. § 207, *et seq*.

76.     Defendants failed to pay Plaintiff and the FLSA Collective the overtime wages to which they were entitled under the FLSA.

77.     Defendants have willfully violated the FLSA by knowingly and intentionally failing to pay Plaintiff and the FLSA Collective overtime wages.

78.     As a result of Defendants' violations of the FLSA, Plaintiff and the FLSA Collective are entitled to recover their unpaid overtime wages, liquidated damages, pre- and post-judgment interest, and reasonable attorneys' fees and costs.

## SECOND CLAIM
### (NYLL – Unpaid Overtime Wages)

79. Plaintiff repeats and incorporates all foregoing paragraphs by reference.

80. Defendants are employers within the meaning of the NYLL §§ 190, 651(6), 652 and supporting NYDOL Regulations and employed Plaintiff.

81. Under the NYLL and supporting NYDOL regulations, including 12 NYCRR § 146-1.4, Defendants were required to pay Plaintiff one and one-half (1½) times his regular rate, which could not be lower than the applicable minimum wage rate, for all hours worked over forty per workweek.

82. Defendants failed to pay Plaintiff the overtime wages to which he was entitled under the NYLL.

83. Defendants willfully violated the NYLL by knowingly and intentionally failing to pay Plaintiff overtime wages at the correct overtime wage rate due.

84. As a result of Defendants' willful violations of the NYLL, Plaintiff is entitled to recover his unpaid overtime wages, liquidated damages, pre- and post-judgment interest, and reasonable attorneys' fees and costs.

## THIRD CLAIM
### (NYLL – Spread-of-Hours Pay)

85. Plaintiff repeats and incorporates all foregoing paragraphs by reference.

86. Defendants willfully failed to pay Plaintiff additional compensation of one hour's pay at the basic minimum hourly wage rate for each day during which he worked shifts spanning over ten hours, in violation of the NYLL and its supporting NYDOL regulations, including 12 NYCRR § 146-1.6.

87. As a result of Defendants' willful violations of the NYLL, Plaintiff is entitled to recover his unpaid spread-of-hours pay, liquidated damages, pre- and post-judgment

interest, and reasonable attorneys' fees and costs.

## FOURTH CLAIM
### (NYLL WTPA – Failure to Provide Wage Notices)

88.     Plaintiff repeats and incorporates all foregoing paragraphs by reference.

89.     The NYLL's WTPA requires employers to provide all employees with a written notice of wage rates at the time of hire and whenever there is a change to an employee's rate of pay.

90.     As part of their scheme to avoid paying Plaintiff his overtime wages due and in violation of NYLL § 195(1), Defendants failed to furnish Plaintiff, at the time of hiring, with a wage notice containing the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer in accordance with NYLL § 191; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer, and anything otherwise required by law.

91.     As part of their general practice and policy, Defendants did not provide Plaintiff with wage notices to: (1) conceal from Plaintiff the overtime rates he should have received, (2) obstruct Plaintiff from knowing, complaining about, and rectifying Defendants' unlawful wage payment practices, and (3) avoid paying the required overtime wages to Plaintiff.

92.     As a result of Defendants' violations of NYLL § 195(1), Plaintiff is entitled to recover statutory damages and reasonable attorneys' fees and costs, pursuant to NYLL § 198(1–b).

13

## FIFTH CLAIM
### (NYLL WTPA – Failure to Provide Accurate Wage Statements)

93.     Plaintiff repeats and incorporates all foregoing paragraphs by reference.

94.     The NYLL's WTPA requires employers to provide employees with an accurate wage statement with each payment of wages.

95.     As part of their scheme to avoid paying Plaintiff his overtime wages due, Defendants failed to furnish Plaintiff with a statement with each wage payment accurately listing: rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages; in violation of NYLL § 195(3).

96.     As part of their general practice and policy, Defendants did not provide Plaintiff with accurate wage statements in order to: (1) conceal from Plaintiff the overtime wages he should have received and the precise number of overtime hours he worked per workweek, (2) obstruct Plaintiff from knowing, complaining about, and rectifying Defendants' unlawful wage payment practices, and (3) avoid paying the required overtime wages to Plaintiff.

97.     As a result of Defendants' violations of NYLL § 195(3), Plaintiff is entitled to recover statutory damages and reasonable attorneys' fees and costs, pursuant to NYLL § 198(1-d).

## SIXTH CLAIM
### (NYSHRL – National Origin Discrimination)

98.     Plaintiff repeats and incorporates all foregoing paragraphs by reference.

99.     At all relevant times, Defendants were Plaintiff's employer as defined by the NYSHRL, N.Y. Exec. Law § 292(5).

14

100.    Defendants discriminated against Plaintiff on the basis of his national origin in violation of NYSHRL by subjecting him to an English only workplace rule while working at Dero's Food & Family that resulted in him being treated less well than his non-Spanish speaking coworkers, constituted discrimination and created a hostile work environment.

101.    Despite Plaintiff's complaints to Defendants, Defendants did nothing to abate or prevent the discrimination suffered by Plaintiff.

102.    As a direct and proximate result of Defendants' unlawful and willful discriminatory conduct in violation of the NYSHRL, Plaintiff has suffered lost wages, mental anguish and emotional distress, including but not limited to humiliation, and embarrassment.

103.    Defendants' unlawful and discriminatory actions constitute malicious, willful, and wanton violations of the NYSHRL or were done with reckless disregard for Plaintiff's rights.

104.    As a result of Defendants' unlawful and willful discriminatory conduct, Plaintiff is entitled to all remedies and relief afforded by the NYSHRL, including but not limited to declaratory and injunctive relief, monetary damages, emotional distress damages, punitive damages, and attorneys' fees and costs.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

a.    declare that Defendants violated the overtime wage provisions of the FLSA, NYLL, and supporting regulations;

b.    declare that Defendants violated the spread-of-hours pay provisions of the NYLL and supporting regulations;

c.    declare that Defendants violated the wage notice and wage

15

statement provisions of the NYLL's WTPA;

d.      declare that Defendants' violations of the FLSA and the NYLL were willful;

e.      enjoin and permanently restrain Defendants from further violations of the FLSA and NYLL;

f.      award Plaintiff and the FLSA Collective damages for unpaid overtime wages;

g.      award Plaintiff damages for unpaid spread-of-hours pay;

h.      award Plaintiff liquidated damages pursuant to the FLSA and the NYLL;

i.      award Plaintiff statutory damages as result of Defendants' failure to furnish Plaintiff with a wage notice and accurate wage statements as required by the NYLL's WTPA;

j.      declare that Defendants' actions as described in this Complaint violated the NYSHRL;

k.      award Plaintiff damages under the NYSHRL, including monetary/economic damages, compensatory damages, and punitive damages;

l.      award Plaintiff pre- and post-judgment interest;

m.      award Plaintiff reasonable attorneys' fees and costs pursuant to the FLSA, NYLL, NYLL; and

n.      award such other and further relief as the Court deems just and proper.

16

## JURY TRIAL DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury in this action.

Dated:  New York, New York
       March 25, 2026

PECHMAN LAW GROUP PLLC

By: _____
    Louis Pechman
    Vivianna Morales
    Rachell Henriquez
    Pechman Law Group PLLC
    488 Madison Avenue - 17th Floor
    New York, New York 10022
    (212) 583-9500
    pechman@pechmanlaw.com
    morales@pechmanlaw.com
    henriquez@pechmanlaw.com
    *Attorneys for Plaintiff*

17